BRANDON GAUSE,

     Plaintiff,

v.                         Case No.: 8:18-cv-1726-EAK-AAS

MEDICAL BUSINESS CONSULTANTS,
INC.,

     Defendant.

_____

## ORDER

Plaintiff Brandon Gause, on behalf of himself and a putative class of approximately 1,000 other individuals, sues Defendant Medical Business Consultants, Inc. ("**MBC**") for alleged violations of the Florida Consumer Collection Practices Act ("**FCCPA**"), Fla. Stat. §§ 559.55, *et seq.*, and the Fair Debt Collection Practices Act ("**FDCPA**"), 15 U.S.C. §§ 1692 *et seq.* (Doc. 1). He also seeks declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq. Id.* MBC moves to dismiss or, alternatively, for judgment on the pleadings. (Doc. 23). Gause opposes. (Doc. 27). The Court will grant in part and deny in part the motion.

I.

Gause is a natural person and a Florida resident. (Doc. 1 at ¶10). MBC is a Florida corporation that provides debt collection services to physicians and other medical service providers in Florida. *Id.* at ¶¶2, 11.

On January 3, 2018, MBC sent Gause a one-page collection letter (the "**Letter**") in an attempt to collect a $1,610.55 debt Gause incurred after receiving personal medical services from Florida Cardiology Associates. (Doc. 1-1). The Letter is from MBC's "Settlement Division" and is addressed to Gause at a Port Richey, Florida address. *Id.* The Letter reads:

> We have been retained by [Florida Cardiology Associates] to settle this account. Please send payment in full in the enclosed envelope.
>
> If you feel that this is not a valid debt CONTACT US IMMEDIATELY AT (***) ***-****. If you fail to contact us we will have no choice but to assume that this is a VALID and JUST DEBT.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor.

*Id.* (capitalization in original, redaction added). The Letter is signed by "Your Representative, LISA SMITH" and lists the same telephone number provided in the body of the Letter. *Id.* (capitalization in original). In the bottom left corner of the Letter is a space for Gause to provide his debit or credit card payment information. *Id.* In the bottom right corner of the Letter are two text boxes stacked atop one another. *Id.* The first text box reads:

> **We report to multiple Credit Bureaus bi-weekly. This delinquent balance could prevent you from obtaining credit when you need it in the future.**

*Id.* (bolding in original). The second reads:

| What to Do When You Receive a Collection Notice | |
|---|---|
| **Don't Get Angry** | **Let Us Help** |
| Your account was referred to us by someone that values your business. | Our staff is experienced in credit and collections. They are ready to assist you if you will let them. |
| *This is not intended to be legal advice* | |

*Id.* (bolding and italics in original). The Letter concludes, "**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.**" *Id.* (capitalization and bolding in original).

The complaint alleges MBC sent nearly identical collection letters to approximately 1,000 other individuals in the state of Florida during the putative class period. (Doc. 1 at ¶16).

## II.

Gause initiated this litigation by filing a three-count, class action complaint with the Court on July 18, 2018. (Doc. 1). Count I alleges MBC violated section 559.72 of the FCCPA because MBC, through the Letter, asserted the existence of a legal right it knew it didn't have by (i) stating it would assume the debt was "valid" and "just" if Gause didn't contact MBC "immediately" and (ii) implicitly threatening to report the debt to multiple credit bureaus bi-weekly. *Id.* at ¶¶37–46. Count II alleges MBC violated the FDCPA in

three distinct respects: *first*, that MBC violated section 1692g because the Letter's demand for immediate action and implicit threat to report the debt overshadowed Gause's statutory right to dispute and verify the debt within thirty days; *second*, that MBC violated section 1692e because the Letter's implicit threats to report the debt were false; and *third*, that, alternatively, MBC violated section 1692f because the Letter, as a whole, amounted to an unfair and unconscionable means to collect a debt. *Id.* at ¶¶47–55. Count III alleges Gause is entitled to (i) a declaratory judgment declaring that MBC's conduct violated the FCCPA and the FDCPA and (ii) an injunction enjoining MBC from collecting or attempting to collect debts using communications like those contained in the Letter. *Id.* at ¶¶56–66.

MBC answered the complaint on August 13, 2018. (Doc. 9). MBC admits it's engaged in the business of collecting debts for physicians and other medical service providers in Florida, and that it's a "debt collector" as that term is defined by both the FCCPA and the FDCPA. *Id.* at ¶11. MBC also admits it sent Gause the Letter in an attempt to collect the debt he owed to Florida Cardiology Associates, and that the debt qualifies as a "consumer debt" under both the FCCPA and the FDCPA. *Id.* at ¶¶26, 28. MBC denies the remainder of Gause's allegations and asserts a single affirmative defense (failure to state a claim). *See generally id.*

MBC filed the instant motion on April 19, 2019. (Doc. 23). MBC moves pursuant to Rule 12(b)(1), Fed. R. Civ. P., for the entry of an order dismissing the action for lack of subject matter jurisdiction. *Id.* at 4–7. As grounds, MBC argues Gause cannot establish he suffered a "concrete injury" as required by the Supreme Court in *Spokeo, Inc. v. Robins,*

136 S. Ct. 1540 (2016), and that Gause therefore lacks standing to sue. *Id.* Alternatively, MBC moves pursuant to Rule 12(c), Fed. R. Civ. P., for the entry of an order granting judgment on the pleadings in MBC's favor and against Gause on each of his claims. *Id.* at 7–16. As grounds, MBC argues the complaint, as a matter of law, fails to plausibly allege violations of either the FCCPA or the FDCPA. *Id.* at 7–15. And because the complaint fails to plausibly allege violations of either statute, says MBC, there's likewise no legal basis for the entry of a declaratory judgment in Gause's favor. *Id.* at 15–16.

Gause responded in opposition to the motion on June 3, 2019. (Doc. 27). With respect to standing, Gause contends MBC's violations of the FCCPA and the FDCPA did, in fact, result in "concrete" injuries to Gause because the violations posed "a real risk of harm" to Gause's "statutorily recognized interests." *Id.* at 7–12. With respect to MBC's alternative request for judgment on the pleadings, Gause contends the complaint plausibly alleges violations of the FCCPA and the FDCPA, as well as Gause's entitlement to the entry of a declaratory judgment in his favor and against MBC. *Id.* at 12–20.

The motion is fully briefed and ripe for the Court's determination.

III.

First, the Court will provide pertinent background on the FCCPA and the FDCPA. Next, the Court will address whether Gause has standing to sue. Finally, the Court will address whether MBC is entitled to judgment on the pleadings.

A.

As a result of increased abuse by consumer debt collectors and the lack of any meaningful common law tort remedies, in the late-1960s and early-1970s, state legislatures began to recognize the need for consumer protection legislation in the area of debt collection. And by the late-1970s, most states had enacted consumer protection laws aimed at preventing abusive debt collection practices. *See* H.R. Rep. No. 95-131 at 3 (1977) (noting that thirty-seven states and the District of Columbia had laws regulating debt collectors.) For its part, Florida enacted the FCCPA in 1972 "as a means of regulating the activities of consumer collection agencies within the state." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam). The purpose of the FCCPA "is to deter bad collection practices," and "to protect Florida consumers from illegal [and] unscrupulous practices of debt collectors and other persons." *Brook v. Chase Bank USA, N.A.*, 566 F. App'x 787, 790 (11th Cir. 2014) (per curiam) (citation omitted). *See also Harris v. Beneficial Fin. Co. of Jacksonville*, 338 So.2d 196, 200–01 (Fla. 1976) (describing the FCCPA as "a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations"). Relevant here, section 559.72 of the FCCPA prohibits a debt collector, in attempting to collect a debt, from "asserting the existence of [a] legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

But abusive debt collection wasn't just a state issue. In the late-1970s, Congress began to recognize abusive debt collection as "a widespread and serious national problem"

as well. S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N 1695, 1696.

Congress found:

> There is abundant evidence of the use of abusive, deceptive, and unfair debt
> collection practices by many debt collectors. Abusive debt collection
> practices contribute to the number of personal bankruptcies, to marital
> instability, to the loss of jobs, and to invasions of individual privacy.
>
> . . .
>
> Existing laws and procedures for redressing these injuries are inadequate to
> protect consumers.

15 U.S.C. § 1692(a)–(b). As a result, Congress enacted the FDCPA in 1978. Like the

FCCPA and other states' laws regulating consumer debt collection practices, the purpose

of the FDCPA "is to protect consumers from a host of unfair, harassing, and deceptive debt

collection practices," S. Rep. No. 95-382, at 1 (1977), *reprinted in* 1977 U.S.C.C.A.N.

1695, 1696, and "to eliminate abusive debt collection practices by debt collectors, to insure

that those debt collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect consumers

against debt collection abuses," 15 U.S.C. § 1692(e). Relevant here, sections 1692e and

1692f of the FDCPA, respectively, prohibit debt collectors from using "any false,

deceptive, or misleading representation or means in connection with the collection of any

debt," as well as the use of any "unfair or unconscionable" means of collection. 15 U.S.C.

§§ 1692e, 1692f.

In addition, the FDCPA requires debt collectors to inform consumers in writing of

their statutory right to dispute and verify the debt. This written notice is commonly referred

to as a "validation notice."  Section 1692g of the FDCPA prescribes the mandatory contents of the validation notice.  Specifically, section 1692g(a) requires that

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:
>
> (1)   the amount of the debt;
>
> (2)   the name of the creditor to whom the debt is owed;
>
> (3)   a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4)   a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5)   a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)–(5).  A debt collector violates the FDCPA where it undertakes "any collection activities" or "communication" during the thirty-day period that "overshadow or [are] inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  15 U.S.C. § 1692g(b).

In accordance with their stated purpose, both the FCCPA and the FDCPA permit individuals to sue debt collectors who fail to comply with the statutes' provisions.  *See* Fla. Stat. § 559.77(2) ("A debtor may bring a civil action against a person violating the

8

provisions of [section 559.72].”); 15 U.S.C. § 1692k(a) (permitting institution of a civil action for damages against “any debt collector who fails to comply with any provision of this subchapter”). And although both statutes are remedial in nature and prohibit similar, abusive debt collection practices, the FDCPA doesn’t preempt the FCCPA, so long as the FCCPA’ s provisions aren’t inconsistent with those of the FDCPA. *See* 15 U.S.C. § 1692n. Plaintiffs may therefore be entitled to recover under both the FCCPA and the FDCPA in a single action for the same conduct. Available remedies under the FCCPA and the FDCPA include actual damages, statutory damages up to $1,000 subject to the Court’s discretion, and reasonable costs and attorney’s fees.[1] *See* Fla. Stat. § 559.77(2); 15 U.S.C. § 1692k(a)(1)–(3). The FCCPA also provides for the recovery of punitive damages. *See* Fla. Stat. § 559.77(2).

With that background in mind, the Court turns to the merits of MBC’s motion.

### B.

MBC moves to dismiss the complaint in its entirety on grounds that Gause lacks standing to sue. “[A] dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).” *Stalley ex rel. United States v. Orlando Reg’l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). Challenges to a district court’s subject matter jurisdiction come in two forms: “facial

---

[1] In a class action, the FDCPA permits recovery for “(i) such amount for each named plaintiff as could be recovered” in an individual action, “and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.” 15 U.S.C. § 1692k(a)(2)(B).

attacks" and "factual attacks." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam). Factual attacks, on the other hand, "challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Id.*

MBC styles its motion to dismiss as a "factual attack," as the motion relies on Gause's responses to certain of MBC's discovery interrogatories (*i.e.*, matters outside the four corners of the complaint). (Doc. 23 at 4). But the distinction is of no moment, here, as a district court resolves the question of its subject matter jurisdiction independent of any disputed issues of fact, so long as the inquiry doesn't implicate the merits of the plaintiff's claim. *Morrison*, 323 F.3d at 924–25. And because "standing in no way depends on the merits of [a] plaintiff's contention that particular conduct is illegal," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), the Court is free to independently consider Gause's allegations and to weigh the evidence in order to satisfy itself of its power to hear the case, *see Morrison*, 323 F.3d at 925 (citation omitted). *See also Butler v. Morgan*, 562 F. App'x 832, 834 (11th Cir. 2014) (per curiam) ("A district court may dismiss a complaint for lack of subject-matter jurisdiction based on: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint plus undisputed facts plus the court's resolution of disputed facts.") (citation omitted).

1.

The Constitution limits the power of the federal judiciary to "Cases" and "Controversies." U.S. Const. art. III, § 2. To satisfy the case-or-controversy requirement, a plaintiff must have standing to sue. *Spokeo*, 136 S. Ct. at 1547. The standing doctrine "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Id.* The doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*

"[A] plaintiff must demonstrate standing for each claim he seeks to press." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). And "[i]t is well-settled that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). Thus, as the named plaintiff and putative class representative, Gause must demonstrate standing for each of his claims.

Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must . . . clearly allege facts demonstrating each element." *Id.* (internal quotations and citation omitted). Where any element is missing, the plaintiff lacks standing to sue, and the district

court, as a result, lacks subject matter jurisdiction over the plaintiff's claims. *Nat'l Parks Conserv. Ass'n v. Norton*, 324 F.3d 1229, 1241–42 (11th Cir. 2003).

The primary issue raised by MBC's motion to dismiss is whether Gause has established the first element of standing – that is, that he suffered an injury in fact. "'Injury in fact' is the first of three 'irreducible' requirements for Article III standing." *Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring) (quoting *Lujan*, 504 U.S. at 560). "To establish standing, an injury in fact must be concrete."[2] *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019) (citing *Spokeo*, 136 S. Ct. at 1548). To be concrete, an injury "must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citation omitted). It must be "real, and not abstract." *Id.* (internal quotations and citation omitted). However, "[c]oncrete is not . . . necessarily synonymous with tangible." *Id.* at 1549 (internal quotations omitted). Intangible injuries can be concrete. *Id.* (citation omitted).

A concrete injury-in-fact "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). *See also Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights. . . . A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.")

---

[2] "An injury in fact must also be particularized, that is, affecting the plaintiff 'in a personal and individual way.'" *Salcedo*, 936 F.3d at 1167 n.3 (quoting *Spokeo*, 136 S. Ct. at 1548). MBC doesn't dispute that Gause's allegations are of a personal and individual nature.

(internal quotations and citations omitted); *Lujan*, 504 U.S. at 578 (Kennedy, J., concurring) ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.") (citation omitted); *Frank v. Gaos*, 139 S. Ct. 1041, 1046–47 (2019) (Thomas, J., dissenting) ("By alleging [violations of the Stored Communications Act, which creates] . . . private dut[ies] owed personally to them as individuals . . . the plaintiffs established standing.") (internal quotations and citations omitted).

However, the Supreme Court has made clear that not all statutory violations manifest in concrete injury. *Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation."). What's not clear, though, is where, exactly, that line is drawn. To be sure, the analysis is multifaceted. As the Supreme Court instructs, in determining whether a statutory violation results in a concrete injury in fact, courts consider both "history and the judgment of Congress." *Id.* The Eleventh Circuit instructs likewise: "Our responsibility to ensure that plaintiffs allege a real injury in fact requires us to look closely at their allegations in light of the statute, our precedent, history, and the judgment of Congress." *Salcedo*, 936 F.3d at 1173.

Still, a definitive line between when a statutory violation results in a concrete injury, and when it doesn't, remains elusive – not only in this Circuit, but in all of them. Indeed,

in trying to find that line, this Court has reviewed dozens (and dozens) of circuit and district court decisions interpreting the Supreme Court's standing jurisprudence and applying it to myriad consumer protection statues, such as the FDCPA. Although that expedition failed to reveal a conclusive answer, it did uncover a starting point: where, as here, a plaintiff's standing is predicated on a violation of a statutorily created right, his standing to sue turns on whether such a right is substantive or merely procedural. *See, e.g., Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 n.2 (11th Cir. 2016) (per curiam). However, pinning a particular statutory provision as one that creates statutorily mandated procedures versus one that protects an individual's substantive rights isn't always a simple task. *See Lashanda Jones v. The Salvation Army*, No. 3:18-cv-804-TJC-JRK, 2019 WL 6051437, at *5 (M.D. Fla. Nov. 15, 2019) (Corrigan, J.) ("The distinction between a 'bare procedural violation' and a substantive one causing concrete injury is not always clear."). But as a comprehensive review of precedent reflects, it's nonetheless a decisive one. And that's where the Court begins.

a.

The Supreme Court addressed the issue of standing in the context of a procedural statutory violation in *Spokeo*. 136 S. Ct. at 1544–1550. In *Spokeo*, Thomas Robins sued Spokeo, Inc., the eponymous owner and operator of the popular "people search engine" Spokeo.com, for alleged violations of the Fair Credit Report Act ("**FCRA**"). *Id.* at 1544. As explained by the Supreme Court, "[t]he FCRA seeks to ensure 'fair and accurate credit reporting . . . [and] regulates the creation and the use of 'consumer report[s]' by 'consumer

14

reporting agenc[ies]' for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment." *Id.* at 1545 (citation omitted). "The FCRA imposes a host of requirements concerning the creation and use of consumer reports," including requiring consumer reporting agencies to, *inter alia*, "follow reasonable procedures to assure maximum possible accuracy of consumer reports." *Id.* The FCRA permits an individual to sue to recover statutory damages against "[a]ny person who willfully fails to comply with any requirement [of the Act]." *Id.* (citation omitted).

Robins alleged "someone" initiated a Spokeo search request for information about him, and that the resulting personal "profile" Spokeo generated "contained inaccurate information" regarding Robins' marital and familial status, his age, his employment, his economic status, and his education. *Id.* at 1546. Robins filed a class-action complaint, alleging Spokeo willfully failed to comply with the FCRA's statutory procedures. *Id.* The district judge determined Robins hadn't properly pleaded an injury in fact and dismissed his complaint for lack of standing. *Id.* Robins appealed, and a three-judge panel of the Ninth Circuit reversed. *Id.* Explaining that "the violation of a statutory right is usually a sufficient injury in fact to confer standing," the panel held Robins' alleged violations of his individualized statutory rights under the FCRA were sufficient to satisfy the injury-in-fact requirement of Article III. *Id.* Spokeo appealed to the Supreme Court. *Id.*

On review, a majority of the Supreme Court determined the Ninth Circuit's analysis was "incomplete." *Id.* at 1550. Specifically, the Supreme Court held the panel erred

because it addressed only whether Robins' alleged injury was sufficiently particularized and failed to independently address whether Robins' alleged injury was sufficiently concrete – two necessary and mutually exclusive components of Article III standing. *Id.* at 1550. The Supreme Court ultimately remanded the action to the Ninth Circuit to rule on concreteness in the first instance, but not before it offered guidance for determining when an intangible harm resulting from a procedural statutory violation amounts to a concrete injury in fact. *Id.*

The Supreme Court began by explaining that, in determining whether an intangible harm constitutes a concrete injury, "both history and the judgment of Congress play important roles." *Id.* at 1449. As to the former, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citation omitted). As to the latter, Congress' "judgment is also instructive and important" because Congress "is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* But while "the judgment of Congress play[s an] important role[]" in determining "whether an intangible harm constitutes injury in fact," the Supreme Court explained that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Rather, as the Supreme Court admonished, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* "A bare procedural

violation, divorced from any concrete harm," cannot "satisfy the injury-in-fact requirement of Article III." *Id.*

The Supreme Court went on to explain, however, that an intangible injury premised on a procedural statutory violation *may,* "in some circumstances," amount to a concrete injury. *Id.* Although true "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," *id.* at 1548–49 (internal quotations and citation omitted), true too "where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may," by itself, "demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified,'" *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis in original).

The Supreme Court colored its analysis with some practical insight into the particulars of Robins' case:

> In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Spokeo*, 136 S. Ct. at 1550.

Thus, *Spokeo* "identified two approaches" for determining whether an intangible harm stemming from a procedural statutory violation is sufficient to constitute a concrete injury in fact. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017) (citing *Spokeo*, 136 S. Ct. at 1549). Under the first approach, "the one of history," a court considers "whether 'an alleged intangible harm' is closely related 'to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). "If so, it is likely to be sufficient to satisfy the injury-in-fact element of standing." *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). Under the second approach, a court considers "whether Congress has expressed an intent to make an injury redressable." *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). But even where Congress has conferred some procedural statutory right, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549. Rather, to establish a concrete injury in fact arising out of a procedural statutory violation, a plaintiff must clearly allege that the violation harmed, or presented an appreciable risk of harm to, the underlying concrete interest(s) that Congress sought to protect by enacting the statute at issue. *Id.* at 1549–1550. *See also Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 140–41 (E.D.N.Y. 2016) (Bainco, J.) ("[T]he test articulated in *Spokeo* . . . concerns procedural violations of statutory schemes. In such cases, a court must determine whether the

purported infraction presents a 'risk of real harm' to concrete statutory interests . . . or instead implicates 'a procedural right *in vacuo*.'") (internal citations omitted).

b.

A majority of the Supreme Court has yet to specifically address the interplay of substantive versus procedural statutory rights and their import on a plaintiff's standing to sue for alleged violations of federal (or state) consumer protection statutes, such as the FDCPA. However, both the Eleventh and Ninth Circuits have addressed the issue, as have multiple district courts.

*i. The Eleventh Circuit*

The Eleventh Circuit, albeit in in an unpublished opinion, addressed the issue in the context of an FDCPA violation in *Church*. 654 F. App'x at 992–95. In *Church*, Accretive Health, Inc. ("**Accretive**") sent Mahala Church a collection letter that failed to include any of the validation disclosures required by section 1692g(a) of the FDCPA. *Id.* at 991. Church sued Accretive for statutory damages. *Id.* The district court granted summary judgment on the merits in Accretive's favor, and Church appealed. *Id.* Before it turned to the merits of the appeal, however, the panel began by analyzing Church's standing to bring the lawsuit in light of the Supreme Court's decision in *Spokeo*. *Id.* at 992–95.

Accretive argued Church's injury wasn't sufficiently concrete to support Article III standing because she incurred no actual damages from Accretive's violation of the FDCPA. *Id.* at 992. The panel disagreed, holding Church clearly alleged injury to her statutorily

created right to information under section 1692g(a). *Id.* at 994. Specifically, the panel explained:

> The FDCPA creates a private right of action, which Church seeks to enforce. The Act requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication. The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act. Thus, through the FDCPA, Congress has created a new right – the right to receive the required disclosures in communications governed by the FDCPA – and a new injury – not receiving such disclosures.

*Id.* (internal citations omitted).

The panel concluded:

> It is undisputed that the letter Accretive [] sent to Church did not contain all of the FDCPA's required disclosures. Church has alleged that the FDCPA governs the letter at issue, and thus, alleges she had a right to receive the FDCPA-required disclosures. Thus, Church has sufficiently alleged that she has sustained a concrete – *i.e.*, "real" – injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court [in *Spokeo*] made clear an injury need not be tangible to be concrete. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

*Id.* at 994–95 (internal citations omitted).

Significantly, the panel distinguished between violations of statutorily mandated procedures, at issue in *Spokeo*, and what the panel characterized as the violation of Church's *substantive* statutory rights under the FDCPA:

In *Spokeo*, the Court stated that a Plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." This statement is inapplicable to the allegations at hand, because Church *has not alleged a procedural violation*. Rather, Congress provided Church with a *substantive right* to receive certain disclosures and Church has alleged that Accretive [] violated that *substantive right*.

*Id.* at 995 n.2 (emphasis added).

Some courts have called into question the continuing viability of *Church* following the Eleventh Circuit's subsequent, published decision in *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016). *See, e.g., Lyshe v. Levy*, 854 F.3d 855, 860 (6th Cir. 2017) ("[T]he reasoning employed by *Church* was rejected several months later in the published Eleventh Circuit decision in *Nicklaw*."); *Gross v. Concorde, Inc.*, No. 8:18-cv-1755-WFJ-CPT, 2019 WL 354864, at *3 (M.D. Fla. Jan. 29, 2019) (Jung, J.) ("Arguably, the Eleventh Circuit has receded from *Church* in later cases such as *Nicklaw*."). This Court respectfully disagrees.

In *Nicklaw,* the panel was tasked with deciding "whether a plaintiff has standing to sue when he alleges only a failure to record a satisfaction of mortgage within a statutory period and fails to bring suit until after that statutory violation has been remedied." 839 F.3d at 1000. The statute at issue was a New York law that required mortgagees to record a certificate of discharge with the county clerk within thirty days after a mortgage is satisfied. *Id.* The plaintiff, Roger Nicklaw, alleged CitiMortgage, Inc. ("**Citi**") violated that law when it failed to record Nicklaw's certificate of discharge until more than ninety days after the date of satisfaction. *Id.* Nicklaw alleged no other injury besides the violation

of the deadline set by the statute. *Id.* at 1000–01. Because Nicklaw had alleged "neither a harm nor a material risk of harm" stemming from Citi's delayed recording, the panel held Nicklaw lacked Article III standing. *Id.* at 1003.

To be sure, in concluding Nicklaw lacked standing to sue, the panel didn't explicitly differentiate between procedural and substantive statutory violations. However, such a distinction was unnecessary because the statutory violation at issue in *Nicklaw* was clearly procedural[3] on its face, and thus *Spokeo*'s "risk of harm" standard governed the issue of Nicklaw's standing to sue. Moreover, there's nothing in the language of *Nicklaw* to suggest any intention by the panel to abandon *Church's* recognition that there's a significant difference between a violation of a statutorily mandated procedure and a violation of a substantive, statutory right for purposes of Article III standing. In fact, the panel in *Nicklaw* expressly distinguished a violation of the statutory requirement that a satisfaction of a mortgage be timely recorded, which it held was *not* a concrete injury, from "a violation of a statutory right to receive information," which it held in *Church was* a concrete injury. *Id.* at 1002. And significantly, in a published decision issued after *Nicklaw*, the Eleventh Circuit found a violation of a provision of the Video Privacy Protection Act ("**VPPA**") offended the plaintiff's substantive privacy rights and amounted to a concrete injury in and of itself – *i.e.*, despite the lack of any harm beyond the statutory violation – sufficient to confer standing. *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339–41 (11th Cir.

---

[3] *Black's Law Dictionary* defines a "procedural right" as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." (11th ed. 2019).

2017). *See also Salcedo*, 936 F.3d at 1172 n.11 (citing *Perry*, 854 F.3d at 1340–41) ("In *Perry*, we found standing under the VPPA for a plaintiff suing over privacy violations involving a mobile video app. *Perry* held that the plaintiff's allegations and the 1980s-era statute involved precisely the same *substantive privacy right*.") (emphasis added). Thus, as it stands, the Eleventh Circuit has neither explicitly nor implicitly overruled *Church*, and the decision remains good law in this Circuit.

*ii. The Ninth Circuit*

For its part, the Ninth Circuit has twice addressed the distinction, for purposes of Article III standing, between procedural and substantive statutory rights in the context of VPPA and FCRA violations. *Nayab v. Capital One Bank (USA), N.A.*, No. 17-55944, 2019 WL 5608837, at *4 (9th Cir. Oct. 31, 2019); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). In *Eichenberger*, the panel (like the Eleventh Circuit in *Perry*) held the plaintiff had standing to sue under the VPPA when his video-viewing history was disclosed in violation of the VPPA's prohibition against a video tape service provider knowingly disclosing a consumer's personally identifiable information to third parties. 876 F.3d at 984. The panel explained that a consumer has a "substantive privacy interest in his or her video-viewing history," which Congress sought to protect through the VPPA "by ensuring that consumers retain control over their personal information." *Id.* at 983. The panel further explained that the prohibition against disclosing a consumer's video-viewing history doesn't "describe a procedure that video service providers must follow" but rather "protects generally a consumer's substantive privacy interest in his or her video-viewing

history." *Id.* The panel thus concluded, "*[E]very* disclosure . . . offends the interests that the statute protects," and a plaintiff "need not allege any further harm to have standing." *Id.* at 983–84 (emphasis in original).

Similarly, the Ninth Circuit recently held the plaintiff had standing to sue under the FCRA where a third-party obtained her credit report for an unauthorized purpose. *Nayab*, 2019 WL 5608837, at *4. Citing *Eichenberger*, the panel explained that obtaining a credit report for a purpose not authorized under the FCRA doesn't "merely 'describe a procedure' that one must follow" but rather "violates a *substantive* provision of the FCRA," and thus the plaintiff need only allege the violation of the provision itself to have standing. *Id.* (emphasis in original). The panel further explained that both "historical practice" and the "judgment of Congress" supported a finding of Article III standing. *Id.* at *5–6. As to historical practice, the panel reasoned, "The harm attending a violation of [section] 1681b(f)(1) of the FCRA is closely related to – if not the same as . . . intrusion upon seclusion (one form of the tort of invasion of privacy)," and "[v]iolations of the right to privacy have long been actionable at common law" and don't "always require additional consequences to be actionable." *Id.* As to Congress' judgment, the panel reasoned,

> In passing the FCRA, Congress specifically recognized the elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers and the need to insure that consumer reporting agencies exercise their *grave responsibilities* with fairness, impartiality, and a respect for the *consumer's right to privacy*. We have observed that the FCRA was designed in whole and in virtually each part to protect consumers themselves, and that one goal of the FCRA is to allow the release of credit report for certain purposes only. Congress' concern for privacy in one's consumer report is made clear by the FCRA's (1) general prohibition against obtaining a

consumer report except in limited circumstances, (2) provision of civil liability for violations of the FCRA, including statutory damages for willful violations, and (3) provision of criminal (and civil) liability for those obtaining a credit report under false pretenses. By providing for statutory damages and by providing a private cause of action for violations of Sections 1681f and 1681q, Congress has recognized the harm such violations cause, thereby articulating a chain of causation that will give rise to a case or controversy.

*Id.* at *6 (internal quotations and citations omitted, emphasis in original).

### iii. District Court Decisions

Since *Spokeo*, and consistent with *Church*, *Eichenberger*, and *Nayab*, dozens of district courts around the country, evaluating numerous federal and state consumer protection statutes, have distinguished between violations of statutorily mandated procedures and violations of substantive statutory rights in determining whether a plaintiff has suffered a concrete injury in fact sufficient to confer Article III standing. The cases are too numerous to comprehensively list, but some examples are as follows:

(1)     "[T]here is a meaningful distinction between the direct violation of a specific statutory interest that Congress has recognized . . . and an ancillary procedural infraction that may or may not materially harm that interest. The former, if sufficiently alleged, establishes concrete injury for purposes of Article III, whereas the latter, under *Spokeo* . . . requires a 'real risk of harm' to the underlying right to ensure that the plaintiff does not seek relief for a 'bare procedural violation' that is not constitutionally cognizable." *Bautz*, 226 F. Supp. 3d at 141 (FDCPA).

(2)     "[M]any courts since *Spokeo* have placed dispositive weight on whether a plaintiff

alleges the violation of a substantive, rather than procedural, statutory right. If the

right created by statute is substantive, courts have generally found that Congress

permissibly elevated [the harm recognized by the statute] to the status of legally

cognizable injuries, and thus that a plaintiff alleging violation of a substantive

statutory right has Article III standing." *Matera v. Google Inc.*, No. 15-cv-04062-

LHK, 2016 WL 5339806, at *12 (N.D. Cal. Sept. 23, 2016) (Koh, J.) (internal

quotations and citations omitted) (Wiretap Act and Children's Internet Protection

Act).

(3)     "[T]he Supreme Court recognized [in *Spokeo*] where Congress has endowed

plaintiffs with a *substantive* legal right, as opposed to creating a procedural

requirement, the plaintiffs may sue to enforce such a right without establishing

additional harm." *Guarisma v. Microsoft Corp.*, 209 F. Supp. 3d 1261, 1265 (S.D.

Fla. 2016) (Altonaga, J.) (emphasis in original, citation omitted) (Fair and Accurate

Credit Transactions Act ("**FACTA**") and FCRA).

(4)     "As correctly noted by Plaintiff, the majority opinion in *Spokeo* only focused on a

violation of one of the FCRA's *procedural* requirements, as opposed to a

*substantive* right, which Plaintiff alleges in the case *sub judice* (and the Court agrees

is at issue here)." *Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ,

2016 WL 3946780, at *4 (N.D. Ga. July 13, 2016) (Jones, J.) (emphasis added)

(FACTA).

(5)     "Th[e] distinction [between Congress' role in identifying and elevating intangible harms and a plaintiff's ability to rely on a statutory violation to satisfy Article III's injury in fact requirement] carries particular weight where the right conferred by statute is procedural rather than substantive." *Booth v. Appstack, Inc.*, No. 2:13-cv-1533-JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (Robart, J.) (Telephone Consumer Protection Act, Washington Dialing and Announcing Device Act, and Washington Consumer Protection Act).

(6)     "[S]tanding based on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural." *Napolitano v. Ragan & Ragan*, No. 3:15-cv-2732-FLW, 2017 WL 3535025, at *5 (D.N.J. Aug. 17, 2017) (Wolfson, J.) (FDCPA).

(7)     "Whether a violation of a statutorily created right confers standing turns on whether the right is substantive or merely procedural." *Landrum v. Blackbird Enterprises, LLC*, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016) (Lake, J.) (FCRA).

(8)     "[T]he core issue is whether plaintiff sets forth violations of substantive rights sufficient to constitute a concrete injury or whether he asserts 'a bare procedural violation, divorced from any concrete harm.'" *Anderson v. Wells Fargo Bank, N.A.*, 266 F. Supp. 3d 1175, 1181 (D.S.D. 2017) (Vicken, C.J.) (citing *Spokeo*, 136 S. Ct. at 1549) (FCRA).

(9)     "[R]elevant to the concreteness inquiry is whether Congress created a procedural or substantive right in the statute at issue." *Raffin v. Medicredit, Inc.*, No. 2:15-cv-

4912-MWF-PJW, 2016 WL 7743504, at *2 (C.D. Cal. Dec. 19, 2016) (Fitzgerald,

J.) (internal quotations and citation omitted) (California Invasion of Privacy Act).

## 2.

In sum, what *Spokeo* and its progeny tell us about determining whether a statutory

violation constitutes a concrete injury in fact sufficient to confer Article III standing is this:

First, a court must determine whether the particular statutory provision at issue is

procedural in nature or whether it confers substantive rights to the plaintiff. If a court

determines, on the one hand, the statutory provision creates a technical, *procedural*

requirement, it must then determine whether the plaintiff has clearly alleged the violation

of that procedure harmed or presented an appreciable risk of harm to the underlying

interest(s) that Congress sought to protect by enacting the statute. If so, then the plaintiff

need not allege any additional harm – pecuniary or otherwise – beyond the one identified

by Congress. If not, then he must. On the other hand, if a court determines the statutory

provision at issue confers one or more *substantive* rights, the plaintiff need only allege the

infringement of the statute itself, as the infringement of the right(s) conferred by the statute

invariably harms the interest(s) the statute was enacted to protect and thus *ipso facto*

constitutes a concrete injury in fact. In other words, where there is an invasion of a

substantive statutory right, that invasion *is* the concrete injury.

Here, the complaint alleges MBC violated section 559.72(9) of the FCCPA and

sections 1692g(b), 1692e, and 1692f of the FDCPA. (Doc. 1 at ¶¶37–66). The Court will

first address Gause's claims under sections 1692e and 1692f of the FDCPA, followed by

Gause's claim under section 559.72(9) of the FCCPA. The Court will then address Gause's claim under section 1692g(b) of the FDCPA.

a.

Section 1692e prohibits a debt collector from "us[ing] any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This provision ensures "consumers are fully and truthfully apprised of the facts and of their rights," and "enables them 'to understand, make informed decisions about, and participate fully and meaningfully in, the debt collection process." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1122 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014) (quoting *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006)). *See also Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017) ("Section 1692e protects a consumer's ability to fully avail himself of his legal rights by prohibiting debt collectors from deceiving or misleading debtors in the course of collecting a debt.") (citations omitted). Similarly, section 1692f prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

An overwhelming majority of courts have determined sections 1692e and 1692f of the FDCPA provide substantive rights to consumers that necessarily protect their Congressionally recognized, concrete interests in being free from abusive debt collection practices, and that violations of the statutes' provisions therefore give rise to concrete injuries sufficient to confer Article III standing. *See, e.g., Walker v. Lamb*, No. 4:18-cv-

29

04094-SOH, 2019 WL 542328, at *5–7 (W.D. Ark. Feb. 11, 2019) (Hickey, J.) ("Defendants' alleged violation of section 1692e(10) concerns a substantive right and constitutes a sufficiently concrete harm for purposes of Article III standing."); *Hovermale v. Immediate Credit Recovery, Inc.*, No. 1:15-cv-5646-RBK-JS, 2018 WL 6322614, at *4 (D.N.J. Dec. 4, 2018) (Kugler, J.) ("Section 1692e provides a substantive, and not merely procedural, statutory right under the FDCPA to be free from receiving allegedly false or deceptive information relating to the collection of a debt. In fact, the trend in this district favors finding concrete injury when Section 1692e violations are alleged. . . . [W]hen a debt collector violates Section 1692e by providing false or misleading information, the informational injury that results – *i.e.* receipt of that false or misleading information – constitutes a concrete harm under *Spokeo*.") (internal quotations and citation omitted); *Watkins v. Inv. Retrievers, Inc.*, No. 2:17-cv-1348-KJM-CKD, 2018 WL 558833, *3 (E.D. Cal. Jan 23, 2018) (Mueller, J.) (quoting *Spokeo*, 136 S. Ct. at 1554 (Thomas, J., concurring)) ("[Sections 1692e and 1692f] do not merely impose procedural requirements upon debt collectors, but instead 'create a private duty owed personally to' a consumer by a debt collector to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt."); *Michael v. HOVG, LLC*, 232 F. Supp. 3d 1229, 1235 (S.D. Fla. 2017) (Bloom, J.) (holding the plaintiff's allegations that the debt collector violated sections 1692e(10) and 1692f(8) were sufficient to establish a concrete injury-in-fact); *Fuentes v. AR Res., Inc.*, No. 3:15-cv-7988-FLW-LHG, 2017 WL 1197814, at *5 (D.N.J. Mar. 31, 2017) (Wolfson, C.J.) ("Accordingly, this Court joins the overwhelming majority of courts that have determined that FDCPA violations under §§

1692e and 1692f give rise to concrete, substantive injuries sufficient to establish Article III standing.") (internal quotations and citations omitted); *Guerrero v. GC Servs. Ltd. P'ship*, No. 2:15-cv-7449-DRH-AKT, 2017 WL 1133358, at \*10 (E.D.N.Y. Mar. 23, 2017) (Tomlinson, J.) ("[T]the majority of post-*Spokeo* decisions which have analyzed standing within the context of the FDCPA have determined that, unlike the FCRA section at issue in *Spokeo*, which contains only procedural requirements, the FDCPA creates a *substantive right*, the violation of which would itself give rise to a concrete injury.") (collecting cases); *Pritchett v. Paul Mason & Assocs., Inc.*, No. 3:15-cv-197-TCB-RGV, 2017 WL 11151610, at \*2 (N.D. Ga. Mar. 2, 2017) (Batten, J.) ("The allegation that [the defendant] violated [sections 1692e and 1692f] . . . is no "bare procedural violation" of the type [*Spokeo*] held would not satisfy Article III's injury-in-fact requirement."); *Hill v. Accounts Receivable Servs., LLC*, No. 0:16-cv-219-DWF-BRT, WL 6462119, at \*4 (D. Minn. Oct. 31, 2016) (Frank, J.) (holding section 1692e "establishes a right to truthful information regarding the collection of a debt" and that an alleged violation was a real harm not a mere procedural violation); *Quinn v. Specialized Loan Servicing, LLC*, No. 1:16-cv-2021-EEB-JTG, 2016 WL 4264967, at \* 3-5 (N.D. Ill. Aug. 11, 2016) (Bucklo, J.) (holding an alleged violation of section 1692e(10) constitutes a concrete injury in fact); *McCamis v. Servis One, Inc.*, No. 8:16-cv-1130-JSM-AEP, 2016 WL 4063403, at \*2 (M.D. Fla. July 29, 2016) (Moody, J.) (holding the plaintiff had alleged concrete injuries under sections 1692e and 1692f where he alleged the debt collector attempted to enforce an illegitimate debt that had been discharged in bankruptcy because "Plaintiff has statutorily-created rights to be free from . . . being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.").

Moreover, section 1692e's and section 1692f's prohibitions on providing false statements or utilizing unfair means in order "to induce a person to part with money bear[] a close resemblance to traditional causes of action for fraud and deceit, and protect[] interests previously recognized at law." *Griffin v. Andrea Visgilio-McGrath, LLC*, No. 2:17-cv-6-KCM-MAH, 2017 WL 3037387, at *6 (D.N.J. July 18, 2017) (McNulty, J.). *See also Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) ("With [section] 1692f(1), Congress identified a harm – being subjected to attempts to collect debts not owed. This alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. It is similar to the harm suffered by victims of the common-law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process.") (internal quotations and citation omitted). And in passing the FDCPA, Congress has elevated consumers' entitlement to truthful and fair validation disclosures to the status of a legally cognizable, redressable injury under federal law. *See Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 669 (D.N.J. 2017) (McNulty, J.) ("The right not to be given false information about the true amount owed is rooted in an interest traditionally recognized at law. Congress, in enacting the FDCPA, could give content to that interest and elevate particular violations of it to the status of a viable federal cause of action."). This further demonstrates the concreteness of the injury arising from violations of section 1692e and section 1692f. *See Spokeo*, 136 S. Ct. at 1549.

As a result, a plaintiff alleging a violation of either provision need not allege any harm that could exist independent of the violation itself to demonstrate a concrete injury for purposes of Article III standing. Therefore, by alleging the Letter was false, deceptive, and misleading, and that it, as a whole, amounted to an unfair and unconscionable means of collection, the complaint clearly alleges a concrete injury in fact sufficient to confer standing to sue for violations of section 1692e and section 1692f of the FDCPA.

Accordingly, MBC's motion to dismiss is **DENIED** as to Count II of the complaint to the extent the motion seeks dismissal of Gause's section 1692e and section 1692f claims.

b.

The analysis proceeds in a similar fashion with respect to Gause's claim under section 559.72(9) of the FCCPA. Section 559.72(9) of the FCCPA prohibits a debt collector from attempting to collect a debt through the assertion of a non-existent legal right. Fla. Stat. sec. 559.72(9). Like sections 1692e and 1692f of the FDCPA, this prohibition protects consumers' concrete interests in being free from abusive debt collection practices and confers a substantive – and not merely a procedural – right to consumers. *See Denova v. Ocwen Loan Servicing, LLC*, No. 8:17-cv-02204-SDM-AAS, 2018 WL 1832901, at *2 (M.D. Fla. Jan. 25, 2018) (Sansone, M.J.) (holding section 559.72(7) of the FDCPA, which prohibits a debt collector from engaging in abusive or harassing conduct, conferred substantive rights to the plaintiff), *report and recommendation adopted,* No. 8:17-cv-2204-SDM-AAS, 2018 WL 1832902 (M.D. Fla. Feb. 28, 2018) (Merryday, J.).

Therefore, by alleging MBC, through the Letter, asserted a legal right it knew it didn't have, the complaint clearly alleges a concrete injury in fact sufficient to confer standing to sue for violation of section 559.72(9) of the FCCPA. *See, e.g., Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1241 (M.D. Fla. 2019) (Chappell, J.) (holding the plaintiff had standing to assert claim under section 559.72(9) of the FCCPA); *Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1307 (S.D. Fla. 2017) (same); *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-MMH-PDB, 2016 WL 4369424, at *11 (M.D. Fla. Aug. 16, 2016) (Howard, J.) (same); *McCamis*, 2016 WL 4063403, at *2 (same).

Accordingly, MBC's motion to dismiss is **DENIED** as to Count I of the complaint.

c.

The analysis proceeds differently, however, with respect to Gause's section 1692g(b) claim. As noted previously, section 1692g(a) creates a substantive right to receive certain information. *See Church*, 654 F. App'x at 995 n.2 (holding section 1692g(a) creates a substantive right to receive the required validation disclosures). But while a statutory right to information may be substantive, "[a] statutory right to receive that information *in a particular format* is procedural." *Landrum v. Blackbird Enterprises, LLC*, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016) (Lake, J.) (emphasis in original). Section 1692g(b) creates just such a procedural right. *See Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945, 960 (S.D. Iowa 2016) (Ebinger, J.) (holding the requirements in section 1692g(b) are "procedural rights."); *Beane v. RPW Legal Servs., PLLC*, 378 F. Supp.

3d 948, 957 (W.D. Wash. 2019) (Jones, J.) (same); *Perry v. Columbia Recovery Grp., LLC*,
No. 2:16-cv-191-JLR, 2016 WL 6094821, at *8 (W.D. Wash. Oct. 19, 2016) (Robart, J.)
(same). *See also Black's Law Dictionary* (11th ed. 2019) (defining a "procedural right" as
"[a] right that . . . helps in the protection or enforcement of a substantive right").

As opposed to conferring a substantive right to consumers, section 1692g(b) creates
a procedural mechanism a debt collector must follow, and which is designed to protect and
reinforce the consumer's substantive right to receive notice of his right to dispute and verify
the debt within thirty days of his receipt of the validation notice. Put another way, while
the *goal* of section 1692g(a) is a substantive one – that is, to ensure that the consumer's
right to dispute and verify the debt within thirty days is, in fact, conveyed to the consumer
in the validation notice – the *means* identified in section 1692g(b) to effectuate that goal
are purely a matter of the form the validation notice must take – that is, prohibiting the
remaining contents of the validation notice from overshadowing or contradicting that right.

Therefore, because section 1692g(b) confers a procedural, as opposed to a
substantive, right to consumers, a plaintiff asserting a violation of section 1692g(b) cannot
simply assert a bare violation of the statute to invoke the jurisdiction of a federal court;
rather, he must "clearly allege" he suffered some harm or appreciable risk of harm from
the violation. *Spokeo*, 136 S. Ct. at 1543–44. *See also Nicklaw*, 839 F.3d at 1003 ("[A
procedural] statutory violation plus the risk of a concrete harm is enough to confer
standing.").

Here, the complaint alleges MBC violated section 1692g(b) by (i) requesting Gause contact MBC "immediately" and (ii) implicitly threatening to report the debt to credit bureaus prior to the expiration of the thirty-day validation period. (Doc. 1 at ¶¶4, 50). The complaint alleges these communications overshadowed and were inconsistent with Gause's right to dispute and verify the debt within thirty days. *Id.* at ¶50. However, the complaint doesn't even attempt to allege actual harm or an appreciable risk of harm stemming from the violation. *See Schwartz v. HSBC Bank USA, N.A.*, 750 F. App'x 34, 36–37 (2d Cir. 2018) ("While a bare statutory violation may be sufficient under *Spokeo* . . . to present a particularized risk of real harm to a concrete interest in certain circumstances, a plaintiff still must plead those circumstances affirmatively and plausibly.") (citing *Spokeo*, 136 S. Ct. at 1547).

In his response to MBC's motion, Gause contends MBC's violation of section 1692g(b) "poses an appreciable risk of harm to a consumer's recognized interest in determining how to proceed forward from an initial collection letter without interference and in a suitable amount of time." (Doc. 27 at 10). Even assuming this contention would be sufficient to establish an appreciable risk of harm under *Spokeo*, the Eleventh Circuit has repeatedly held a plaintiff cannot amend his complaint through a response to a motion to dismiss. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (per curiam) (citing *Rosenberg v. Gould,* 554 F.3d 962, 967 (11th Cir. 2009)). Moreover, Gause's contention is belied by the fact he never attempted to dispute or verify the debt or otherwise contact MBC, either by telephone or in writing, at any point. (Doc. 23-2 at 4–

5). The complaint doesn't allege the debt was incorrect, or that Gause ever intended to dispute or verify the debt. Nor does the complaint allege Gause would've attempted to dispute or verify the debt if it hadn't been for the alleged errors in MBC's Letter, or that the Letter otherwise confused Gause as to his right to dispute and verify the debt. Under these circumstances, the Court finds the complaint's allegations amount to a "bare procedural violation" of section 1692g(b), without any attendant harm or appreciable risk of the same, and the complaint thus fails to plausibly make out a concrete injury in fact under section 1692g(b). *See Pozzuolo v. Portfolio Recovery Assocs., LLC*, 371 F. Supp. 3d 217, 224 (E.D. Pa. 2019) (Savage, J.) (holding where the plaintiff never intended to dispute the debt, the debt collector's violation of section 1692g(b) doesn't harm or present a material risk of harm to the plaintiff).

Accordingly, MBC's motion to dismiss is **GRANTED** as to Count II of the complaint to the extent Gause's section 1692g(b) claim is **DISMISSED**.

3.

Gause also seeks declaratory and injunctive relief pursuant to the Declaratory Judgment Act. (Doc. 1 at ¶¶56–66). "In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory [or injunctive] relief – as opposed to seeking damages for past harm – the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future." *A&M Gerber Chiropractic LLC*, 925 F.3d at 1210–11 (internal quotations and citations omitted). *See also Wooden v. Bd. of Regents of Univ.*

*Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir. 2001) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges. . . a real and immediate, as opposed to a merely conjectural or hypothetical, threat of *future* injury.") (emphasis in original). Thus, in order for this Court to have jurisdiction to issue declaratory or injunctive relief, Gause "must assert a reasonable expectation that the injury [he] ha[s] suffered will continue or will be repeated in the future." *Id.* (citations omitted). If he doesn't "assert a reasonable expectation of future injury," he lacks standing to bring an action for declaratory or injunctive relief on behalf of himself and the putative class. *Id.*; *A&M Gerber Chiropractic LLC*, 925 F.3d at 1210–11.

Here, the complaint doesn't even attempt to allege that *Gause* is likely to suffer future harm as a result of conduct traceable to MBC. Rather, the complaint conclusorily alleges only that Gause believes MBC will continue to attempt to collect debts from *other* consumers – not Gause – using communications substantially similar to Letter. (Doc. 1 at 63). Therefore, Gause lacks standing to bring his claim for declaratory and injunctive relief. And because Gause cannot establish the requisite case or controversy between himself and MBC with respect to his claim for declaratory and injunctive relief, he likewise lacks standing to prosecute that claim on behalf of any other member of the putative class. *See O'Shea*, 414 U.S. at 494.

Accordingly, MBC's motion to dismiss is **GRANTED**[4] as to Count III of the complaint, and Count III of the complaint is **DISMISSED**.

## C.

Having determined that Gause has standing to sue for MBC's alleged violations of section 559.72(9) of the FCCPA and sections 1692e and 1692f of the FDCPA, the Court turns to MBC's motion, styled in the alternative, for judgment on the pleadings.

## 1.

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). That is, to survive dismissal, the compliant must state a claim for relief that is plausible on its face. *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)). "To state a claim, a complaint must include allegations plausibly suggesting (not merely consistent with) the plaintiff's entitlement to relief." *Id.* (internal quotations and citations omitted). All well-pleaded

---

[4]  MBC's motion to dismiss doesn't specifically address Gause's standing to bring his claim under the Declaratory Judgment Act. *See generally* (Doc. 23). However, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (citations omitted).

facts in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Id.* (citation omitted). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (per curiam) (citing *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005)). "If it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." *Id.* (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).

2.

MBC moves for judgment on the pleadings on each of Gause's remaining claims under the FCCPA and the FDCPA. (Doc. 23 at 8–15). Specifically, with respect to Gause's claim under section 559.72(9) of the FCCPA, MBC argues the complaint fails to plausibly allege MBC, through the Letter, asserted the existence of a legal right it knew it didn't have. *Id.* at 8–9. With respect to Gause's claims under sections 1692e and 1692f of the FDCPA, MBC argues nothing in the Letter was false or misleading in violation of section 1692e, and, further, that nothing in the Letter amounted to an unfair or unconscionable means of collection in violation of section 1692f. *Id.* at 11–12. MBC also argues Gause's section 1692e and section 1692f claims are improperly predicated on the same alleged misconduct. *Id.*

The Court will address each of Gause's remaining claims in turn.

a.

To state a claim under the FCCPA, the plaintiff must allege facts plausibly suggesting "(1) the defendant is a person within the meaning of the FCCPA, (2) the defendant collected or attempted to collect a debt from the plaintiff, and (3) the defendant committed an act or omission prohibited by the FCCPA when it collected or attempted to collect the debt." *Baumann v. Prober & Raphael*, No. 6:15-cv-1951-PGB-GJK, 2017 WL 10350673, at *2 (M.D. Fla. May 17, 2017) (Byron, J.) (citing Fla. Stat. § 559.72). Here, MBC doesn't dispute it's a "person" as that term is defined by the FCCPA, or that it attempted to collect a debt from Gause. Rather, the issue raised by the motion is whether, by sending the Letter, MBC engaged in an act or omission prohibited by section 559.72 of the FCCPA.

Section 559.72 of the FCCPA, entitled "Prohibited practices generally," lists nineteen debt collection practices that violate the FCCPA. *See* Fla. Stat. § 559.72(1)–(19). The complaint alleges MBC violated subsection (9), which prohibits, *inter alia*, any person "[i]n collecting consumer debts" from "assert[ing] the existence of [a] legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). Specifically, the complaint alleges, by (i) stating MBC would assume the debt was valid if Gause didn't contact MBC immediately and (ii) implicitly threatening to report the debt to credit bureaus bi-weekly, MBC asserted a legal right to require Gause to dispute and verify the debt in a period less than the thirty days mandated by section 1692g of the FDCPA – a right MBC knew it didn't have. (Doc. 1 at ¶¶37–46). Thus, the complaint alleges MBC violated

section 559.72(9) in two distinct respects: first, by stating MBC would assume the debt was valid if Gause didn't contact MBC "immediately"; and second, by implicitly threatening to report the debt. *Id.*

With respect to the former allegation, MBC argues "[t]he use of the word 'immediately' in emphasizing the importance of contesting the debt if the debtor feels it is not valid does not equate to MBC asserting the existence of a legal right it knew did not exist." (Doc. 23 at 9). The Court disagrees. The "legal right" at issue here is the right to "assume" the validity of the debt prior to the expiration of the thirty-day validation period. The Eleventh Circuit instructs that when assessing whether a defendant has asserted the existence of a legal right that doesn't actually exist, courts "must refer to other statutes that . . . define legal rights." *Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1126 (11th Cir. 2004). "The [FDCPA] is just such a statute." *Id.* Section 1692g(a) of the FDCPA requires the validation notice to include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be *assumed to be valid* by the debt collector." 15 U.S.C. § 1692g(a)(3) (emphasis added). Thus, the FDCPA permits a debt collector to "assume" the validity of a debt only *after* the expiration of the thirty-day validation period – not before. So, by alleging MBC erroneously stated it would assume the validity of the debt should Gause fail to contact MBC "immediately" – *i.e.*, prior to the expiration of the 30-day validation period – the

42

complaint plausibly alleges MBC asserted the existence of a legal right it knew[5] it didn't have in violation of section 559.72(9).

With respect to the latter allegation, MBC argues "[t]here is no waiting period before a debt collector can report a debt to the credit bureaus," and that, by "referenc[ing]" in the Letter its ability to report the debt to credit bureaus, it didn't assert the existence of an otherwise nonexistent legal right. (Doc. 23 at 9). The Court agrees. "In the section allowing for civil remedies against a person violating the provisions of section 559.72, the FCCPA states that '[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the [FDCPA].'" *Gann v. BAC Home Loans Servicing LP*, 145 So. 3d 906, 908 (Fla. 2d DCA 2014) (quoting Fla. Stat. § 559.77(5)). According to the Federal Trade Commission, "[a] debt collector may report a debt to a credit bureau *within* the thirty-day notice period, *before* he receives a request for validation or a dispute notice from the consumer." Comment 809(B)—1. Pre-Notice Collection, Federal Fair Debt Collection Practices Act with Federal Trade Commission Staff Commentaries, 2015 WL 6928997 (emphasis added). *See also Campbell v. Credit Bureau Sys., Inc.*, 655 F. Supp.

---

[5] MBC argues, even if the complaint plausibly alleges the Letter asserted the existence of a legal right MBC didn't have, the complaint nonetheless fails to allege MBC had "actual knowledge" the right, in fact, didn't exist. (Doc. 23 at 9). *See LeBlanc*, 601 F.3d at 1192 n.12 (11th Cir. 2010) ("Section 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable.") (emphasis in original). The Court disagrees. The complaint generally alleges MBC "knowing[ly]" engaged in the "conduct described in this Complaint." (Doc. 1 at ¶43). The Court finds this allegation sufficient. Moreover, MBC's argument is specious at best, given the presence of the required validation disclosures (including the section 1692g(a)(3) disclosure) on the face of the Letter.

2d 732, 742 (E.D. Ky. 2009) (holding the defendant's reporting of the plaintiff's debt to a credit bureau prior to the plaintiff's efforts to dispute and verify the debt didn't violate the FDCPA). Thus, MBC maintained, generally, the right to report the debt to credit bureaus prior to the expiration of the thiry-day validation period. Therefore, the Letter's statement that MBC reports to multiple credit bureaus bi-weekly – whether characterized as an implicit "threat" or a general factual recognition – doesn't violate section 559.72(9).

Accordingly, MBC's motion for judgment on the pleadings is **GRANTED** as to Count I of the complaint to the extent Count I relies on the Letter's statement that MBC reports to multiple credit bureaus bi-weekly. The motion is **DENIED** as to the remainder of Count I.

### b.

To state a claim under the FDCPA, the plaintiff must allege facts plausibly suggesting "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381, 1385 (S.D. Fla. 2014) (Cohn, J.) (citation omitted). Here, MBC doesn't dispute Gause was the object of collection activity arising from consumer debt, or that MBC is a debt collector as defined by the FDCPA. Rather, the issue raised by the motion is whether, by sending the Letter, MBC engaged in an act or omission prohibited by sections 1692e or 1692f of the FDCPA.

*i. Gause's Section 1692e Claim*

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The gist of [section] 1692e is that where some aspect of a debt collector's communication – whether explicit or implied – has the purpose or effect of making a debtor more likely to respond, the FDCPA requires that it be true" *Sparks v. Phillips & Cohen Assocs., Ltd.*, 641 F. Supp. 2d 1234, 1248 (S.D. Ala. 2008) (Steele, J.) (internal quotations and citation omitted). Section 1692e includes sixteen subsections, which identify particular debt collection practices that violate the section's general prohibition on false, deceptive, and misleading representations or means of collection. *See* 15 U.S.C. § 1692e(1)–(16). Gause contends the Letter violates subsections (5) and (10), which proscribe, respectively, "[t]he threat to take any action that . . . is not intended to be taken," 15 U.S.C. § 1692e(5), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10). (Doc. 27 at 15–16).

Evaluating whether a debt collector's communication violates subsections (5) or (10) requires the application of different legal standards. Courts evaluate alleged violations of subsection (10) under the "least sophisticated consumer" standard. *Jeter*, 760 F.2d at 1177–78. "The least-sophisticated consumer standard takes into account that consumer protection laws are not made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking, and the credulous." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258–59 (11th Cir. 2014) (internal quotations and

citations omitted). "However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *LeBlanc*, 601 F.3d at 1194 (citation omitted, alterations adopted). And it's presumed that the "least sophisticated consumer" possesses "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (citation omitted). Thus, under subsection (10), courts must consider whether the "'least sophisticated consumer' would be deceived by" the debt collector's communication, *i.e.,* whether the communication "was a 'deceptive means' to collect alleged debts, valid or invalid, by the use of false or deliberately ambiguous threats" of future action. *Jeter*, 760 F.2d at 1177–78.

Subsection (5), on the other hand, doesn't require application of the "least sophisticated consumer" standard. *Id.* a 1775. Instead, whether the debt collector truly intends to take a threatened action is evaluated from the perspective of the debt collector, as opposed to the debtor. In other words, "[t]he subsection (5) issue is simply whether or not [the debt collector] *intended* to take the action threatened." *Id.* (emphasis in original). "Thus, subsection (5) requires proof of a fact which amounts to a *per se* violation of § 1692e. The sophistication, or lack thereof, of the consumer is irrelevant to whether [a debt collector] 'threat[ened] to take any action . . . that [was] not intended to be taken.'" *Id.*

Here, the complaint alleges the Letter, by stating MBC reports to multiple credit bureaus bi-weekly, "(1) threatened [Gause] with immediate consequences if [he] did not

pay the alleged debt or contact MBC despite [his] rights under . . . [section] 1692g" to dispute and verify the debt within thirty days; and "(2) asserted that MBC had the right to take and intended to take actions inconsistent with the consumers' rights under the. . . [section] 1692g notice." (Doc. 1 at ¶50). Gause contends this implicit threat to report the debt was deceptive, in that it was made not because MBC actually intended to carry out the threat, but rather to create a false sense of urgency and spur Gause to act more quickly than the law requires. (Doc. 27 at 16).

Where a debt collector threatens to report a consumer to a credit bureau if certain action is not taken, but does not actually intend to do so, that threat violates section 1692e(5) and (10). *See Cooper v. Retreiaval-Masters Creditors Bureau, Inc.*, No. 1:16-cv-2827-GSF-SMF, 2017 WL 2404952, at *3 (N.D. Ill. June 2, 2017) (Feinerman, J.). MBC argues the Letter's statement that MBC "report[s] to multiple Credit Bureaus bi-weekly" and, that Gause's "delinquent balance could prevent [him] from obtaining credit" in the future, (Doc. 1-1 at 1), isn't a threat of unintended future action, "but rather a statement of the well-known fact, recognized by all consumers, regardless of the degree of their sophistication, that a failure to pay one's bills will affect his ability to obtain credit in the future." (Doc. 23 at 11) (internal quotations and citation omitted). Gause, of course, disagrees and contends MBC's statement that "it reports to multiple credit bureaus bi-weekly," was, in fact, threatening (at least implicitly) and deceptive, and further, that it was a threat on which MBC never intended to follow through. (Doc. 27 at 15–16). In support of his contention, Gause submits MBC's own responses to certain discovery

interrogatories, through which MBC apparently "admit[s] . . . that it never. . . reported a debt to [a] credit bureau within or before thirty days of sending an initial communication." *Id.* at 16 (citing Doc. 18-3 at 4). According to Gause, this establishes that MBC's statement that it reports to multiple credit bureaus bi-weekly amounted to a false and empty threat on which MBC had no intention of actually of following through. *Id.*

Upon consideration, the parties' arguments merely raise questions as to nature of the Letter (*i.e.*, whether the "least sophisticated consumer" would find the Letter threatening or otherwise deceptive) and the inferences that can properly be drawn from it (*i.e.*, whether MBC did, or didn't, actually intend to report Gause's debt). These are necessarily genuine factual disputes, which must be resolved by a jury, not by the court as a matter of law on a motion for judgment on the pleadings. *See LeBlanc*, 601 F.3d at 1197; *Jeter*, 760 F.2d at 1177–78. *See also Walsh v. Jon B. Sage, P.A.*, No. 0:05-cv-61951-FAM-AMS, 2007 WL 9698323, at *8 (S.D. Fla. Mar. 12, 2007) (Moreno, J.) (denying summary judgment to the defendant debt collector on the plaintiff's section 1692e(10) claim where the defendant's collection notice threatened "to take all steps necessary to protect its client's interest, which . . . includ[ed] reporting [the debt] to a credit reporting agency," but the defendant never reported the plaintiff's debt to a credit reporting agency or took any further action other than to send the plaintiff a follow-up collection notice). The Court declines to look beyond the complaint's allegations and convert MBC's motion into one for summary judgment. The complaint alleges MBC, through the Letter, "asserted" it "intended to" report Gause's debt to "multiple credit bureaus bi-weekly," and that this

"threat" was in fact "false" and amounted to a "deceptive" means to collect a debt. (Doc. 1 at ¶¶4, 34, 50). The Court, at this juncture, must accept these allegations as true. *Sun Life Assurance Co. of Canada., LLC*, 904 F.3d at 1207 (citation omitted). And accepting them as such, the allegations plausibly make out a violation of section 1692e(5) and (10). *See Cooper*, 2017 WL 2404952, at *3.

Accordingly, MBC's motion for judgment on the pleadings is **DENIED** as to Count II of the complaint to the extent the motion seeks dismissal of Gause's section 1692e claim.

### ii. Gause's Section 1692f Claim

Section 1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Similar to section 1692e, section 1692f lists eight examples of unfair or unconscionable collection practices that violate the provision. *Id.* at § 1692f(1)–(8). The complaint alleges the same conduct that violated section 1692e also violated section 1692f.

MBC argues to state a claim under section 1692f Gause must allege conduct independent from that which he alleges violates other sections of the FDCPA. (Doc. 23 at 12) ("[I]f the Court determines that [Gause's] section 1692e claim should proceed, MBC notes that [Gause's] section 1692f claim relies upon the same misconduct, namely the collection letter, under section 1692e and is therefore insufficient to state a separate claim."). MBC argues the complaints fails to do this, and that Gause's section 1692f claim should be dismissed as a result. *Id.*

"Cognizant that it could not anticipate every sharp practice used by debt collectors, Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA." *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008) (Eriksen, J.) (citing S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698 ("[T]his bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.")). *See also Edwards v. McCormick,* 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001) (Marbley, J.) ("[Section] 1692f serves a backstop function, catching those 'unfair practices' which somehow manage to slip by [sections] 1692d [and] 1692e"); *Adams v. Law Offices of Stuckert & Yates,* 926 F. Supp. 521, 528 (E.D. Pa. 1996) (Joyner, J.) ("[Section] 1692f allows the court to sanction improper conduct that the FDCPA fails to address specifically"). And there's "a growing consensus, at least among district courts, that a claim under [section] 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA." *Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (Albritton, S.J.) (citing *Baker,* 554 F. Supp. 2d at 953; *Taylor v. Heath W. Williams, L.L.C.*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) (Thrash, Jr., J.); *Foti v. NCO Financial Systems, Inc.,* 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (Karas, J.)). "[A] claim of a violation of [s]ection 1692f is deficient if it 'does not identify any misconduct beyond that which [the plaintiff] asserts violate[s] other provisions of the FDCPA." *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1330 (S.D. Fla. 2009) (Dimitrouleas, J.)

Here, the complaint doesn't allege any improper acts listed within the eight subsections of section 1692f. Rather, Gause's section 1692f claim is predicated on the same misconduct he alleges violates section 1692e. Because the complaint fails to specifically identify how MBC's conduct was also unfair or unconscionable under section 1692f, dismissal of Gause's section 1692f claim is warranted. *See id.* (dismissing section 1692f claim where the plaintiff failed to plead misconduct other than that asserted to violate other FDCPA provisions); *Taylor,* 510 F. Supp. 2d at 1217 (same); *Foti,* 424 F. Supp. 2d at 668 (same); *Rush v. Portfolio Recovery Assocs. LLC,* 977 F. Supp. 2d 414, 432 (D.N.J. 2013) (Wolfson, J.) (same); *Penn v. Cumberland,* 883 F. Supp. 2d 581, 594 (E.D. Va. 2012) (Ellis, J.) (same); *Osborn v. Ekpsz, LLC,* 821 F. Supp. 2d 859, 878 (S.D. Tex. 2011) (Rosenthal, J.) (same); *Tsenes v. Trans-Cont'l Credit and Collection Corp.,* 892 F. Supp. 461, 466 (E.D.N.Y. 1995) (Wexler, J.) (same).

Accordingly, MBC's motion for judgment on the pleadings is **GRANTED** as to Count II of the complaint to the extent Gause's section 1692f claim is **DISMISSED**.

**ORDERED** in Chambers, in Tampa, Florida this 9th day of December, 2019.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record